IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


Jasen Barker,                    :

        Plaintiff,               :

    v.                           :    Case No. 2:07-cv-946

                                 :
Andrew Goodrich, et al.,              MAGISTRATE JUDGE KEMP
                                 :
        Defendants.

OPINION AND ORDER

I.  Introduction

    Jasen Barker, who was, at all times relevant to this case, a
state prisoner, filed this civil rights action under 42 U.S.C.
§1983.  On January 4, 2010, the Court granted summary judgment to
the defendants, finding that they were entitled to qualified
immunity.  That decision was reversed by the Court of Appeals and
the case was remanded for further proceedings.

    The Court held a status conference with counsel on November
1, 2011.  At that time, counsel noted that many of the issues
raised and briefed in the summary judgment motion filed on
October 16, 2009, had not been ruled on because the Court
disposed of the entire case on qualified immunity grounds.
Counsel were given an opportunity to supplement that briefing,
but the only supplementation received by the Court relates to
issues not raised in the initial summary judgment motion.  The
Court is awaiting a reply brief on the issue of whether it should
allow defendants to raise questions relating to whether the
London Correctional Institution is a "person" as that term is
used in §1983, and whether Mr. Barker properly exhausted his
administrative remedies.  Additionally, the Court notes that the
third count of the complaint, a state law claim based on

negligence, has been dismissed by agreement of the parties.  It
appears that the remaining issues raised by the prior summary
judgment motion, but as yet undecided, are these:

(1) Did the defendants act pursuant to an unconstitutional
custom or policy?

(2) Can Defendant Timmerman-Cooper, the warden of LoCI, be
held liable on a theory of respondeat superior?

(3) Are any defendants entitled to summary judgment on
grounds of lack of personal involvement?

Of the other issues not directly addressed, the Eleventh
Amendment argument - that damages cannot be awarded against the
defendants in their official capacities - appears to have been
resolved by the Court of Appeals in the defendants' favor, and
the issue relating to the state law negligence claim has been
resolved by the dismissal of that claim.  Contrary to the
defendants' position, the Court believes that the first and
second issues raised by their summary judgment motion, both of
which deal with whether Mr. Barker's Eighth Amendment claim could
survive summary judgment on its merits, were resolved by the
prior order (which resolution was affirmed by the Court of
Appeals), and, of course, the last issue, that of qualified
immunity, has also been resolved.  Thus, five of the eight
grounds raised in the motion need no further discussion, and the
Court will turn to the remaining three.  The Court incorporates
by reference the prior Opinion and Order's recitation of the
appropriate legal standard under which to judge a motion for
summary judgment, as well as that Opinion and Order's statement
of the facts as they are construed most favorably to Mr. Barker.

## II.  Respondeat Superior Liability

In the motion for summary judgment, defendant Timmerman-
Cooper argues that "there is no evidence that Warden Timmerman-
Cooper encouraged or participated in conduct which led to this

Complaint" given that she was not present in the institution when the incident occurred and gave no orders to anyone who was involved. Motion for Summary Judgment, Doc. 61, at 10. In response, Mr. Barker does not address this issue directly, but rather appears to argue that her liability is co-extensive with LoCI's because the other defendants acted pursuant to an institutional policy which the Warden developed. The reply brief focuses on the constitutionality of the policies at issue and does not directly reiterate the respondeat superior argument.

It is well-settled that a policymaking official can be held liable, along with any entity for which that official makes policy, for constitutional violations which result from the adoption of an unconstitutional procedure. See, e.g., A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center, 372 F.3d 572, 586 (3d Cir. 2004); see also Estate of Young v. Martin, 70 Fed. Appx. 256, 260 n.3 (6th Cir. June 26, 2003)(prison officials can be held individually liable "for their failures in their own obligations with regard to developing and implementing policy and custom in such a way that resulted in violations of their Eighth Amendment rights"). Thus, the question of whether there is a basis on which Warden Timmerman-Cooper can be held liable for having implemented an allegedly unconstitutional policy is subsumed within the question of whether there are material factual issues about whether the institution itself had such a policy, as alleged in Count Two of the complaint. The Court now turns to that question.

### III. Unconstitutional Policy

It is helpful, in analyzing this issue, first to review the allegations of the complaint to determine exactly what policy Mr. Barker alleges to have been in place at LoCI and which led to the defendants' alleged violation of his Eighth Amendment rights. In his complaint, Mr. Barker asserts that this policy consisted of a

"widespread practice or custom which constituted the standard operating procedure of the London Correctional Facility" and that the policy "was to use excessive force by keeping prisoners handcuffed for indefinite periods of time and/or failure to take action when such excessive force was used ...."  Complaint, ¶34. The complaint refers to Exhibit A, the hearing officer's report of the predisciplinary conference for Captain Hampton, which contains the Captain's statement that "leaving handcuffs on inmates until the inmate is ready to give them up, no matter what length of time, is normal procedure" as evidence for this allegation.  In his response to the summary judgment motion, Mr. Barker reiterates this claim, and also cites to deposition testimony from defendants Adams and Gause that the institutional practice was to "wait out" an inmate who did not want to give up his handcuffs rather than to intervene to remove them.  Although defendants attack this evidence as "double hearsay," they do not address the fact that each speaker in the chain of communications about this alleged policy was a corrections supervisor and that such communications could well be viewed as party admissions, and consequently not hearsay, under Fed.R.Evid. 801(d)(2).

The fact that a jury could conclude that LoCI had such a policy does not, of course, answer the question of whether such a policy has unconstitutional applications and whether there was a causal relationship between that policy and the violation of Mr. Barker's Eighth Amendment rights.  The first question has already been partially answered in this case.  Both this Court and the Court of Appeals have held that, under the particular circumstances which existed on the evening in question, and viewing the facts in the light most favorable to the plaintiff, keeping Mr. Barker in handcuffs for twelve hours and causing him to suffer pain and a risk of injury served no legitimate penological purpose and violated the Eighth Amendment.

But this finding is, as the Court of Appeals noted, predicated on accepting Mr. Barker's claim that he did not resist removal of his handcuffs, and that prison policy required that they be removed once he stopped resisting. In fact, the Court of Appeals described defendants' actions in not removing the handcuffs as a departure from "normal procedure." Barker v. Goodrich, 649 F.3d 428, 436 (6th Cir. 2011). Thus, the evidence presented by Mr. Barker is not that the procedure of keeping an inmate in handcuffs until he stops resisting their removal led to the constitutional violation which occurred here, but exactly the opposite - that the defendants failed to follow established procedure because Mr. Barker did stop resisting their efforts to remove his handcuffs, but they left the handcuffs on anyway, leading to the twelve hours of discomfort that he experienced.

Mr. Barker has cited to no cases which hold that a prison may not adopt a policy that states, generally, that force will not be used to remove handcuffs from a prisoner who can only be uncuffed by the use of force. Obviously, forcibly uncuffing an inmate poses risks to the corrections officers who must confront the inmate for that purpose, and to the inmate himself, because the amount and type of force used to restrain the inmate and to remove the handcuffs might be more injurious than simply leaving the inmate handcuffed - especially if it is the inmate who has made the conscious choice not to submit to the handcuffs' removal. See, e.g., Owens v. Padilla, 2008 WL 3916068, *5 (N.D. Cal. August 22, 2008), where the court observed that there may be "legitimate safety or other reasons for keeping [an inmate] in handcuffs" for an extended period of time even if, without such reasons, the extended restraint may violate the Eighth Amendment.

Here, then, even if the institution's general policy was to "wait out" an inmate who refused to have his handcuffs removed, the facts, construed most favorably to Mr. Barker, do not support

his claim that the defendants were following that policy on the night in question.  Rather, they support the opposite conclusion - that they deviated from established policy - and the Court of Appeals used that fact as part of its rationale for denying the defendants qualified immunity.  Under these circumstances, defendants are entitled to summary judgment on the issue of whether any Eighth Amendment violations were caused by the application of a practice or policy existing within the LoCI.

## IV.  Personal Involvement

Defendants' remaining argument is that there is no evidence that four of them - defendants Goodrich, Frye, Alston, and Rodgers - had any direct involvement in the alleged deprivation of Mr. Barker's Eighth Amendment rights.  Direct personal involvement is, absent some theory like that asserted against the Warden based on her policy-making role, a necessary precondition to holding a government official liable under §1983.  Monell v. Department of Social Services, 436 U.S. 658 (1978); Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999).

In response, Mr. Barker notes the following evidence of these defendants' involvement with the handcuffing incident. Defendant Frye, he says, participated in the initial decision to handcuff him, and refused to form an extraction team to remove the restraints.  Defendants Alston and Rodgers "were present for the majority of the time that [Mr. Barker] was restrained in solitary confinement without a restroom break" and "failed to remove [his] restraints."  Finally, defendant Goodrich "participated in the conduct that violated [Mr. Barker's] constitutional rights."  Responsive Memorandum, Doc. 63, at 18. The precise conduct in which defendant Goodrich allegedly engaged is not specified, however.

The conduct which the Court of Appeals found to be actionable was knowledge on the part of the defendants (although

the precise defendants were not identified) that "Barker's restraints would make it difficult for him to lie down comfortably, push a button for water, or remove his pants to access the restroom," and their choice "to ignore these conditions as punishment for Barker's perceived misdeeds." Barker v. Goodrich, 649 F.3d at 434-35. Thus, only defendants who were both present and aware of the discomfort from which Mr. Barker suffered can be held liable under this theory.

As noted, Mr. Barker never specifies what defendant Goodrich is supposed to have done which would make him liable for the injury suffered by Mr. Barker. It is not ordinarily the Court's task to search the record to see if it contains any facts from which this defendant's personal involvement in the incident in question can reasonably be inferred. However, in his deposition, Mr. Barker testified that Officer Goodrich's involvement was limited to issuing the original ticket that caused him to be taken to the captain's office. Given that the alleged constitutional violation did not occur until well after that time, it does not appear that there is any basis on which defendant Goodrich could be held liable for it.

The same cannot be said for the other three defendants. Lieutenant Frye was on duty when Mr. Barker was taken to isolation and briefed Lieutenant Adams about the situation when she reported to work that evening. Part of his report was that Mr. Barker had refused to have his handcuffs removed - a statement that, for summary judgment purposes, must be regarded as false. Lieutenant Frye also refused to form an extraction team, a decision which, taking the facts in the light most favorable to Mr. Barker, simply perpetuated the false impression that Mr. Barker was not cooperating. These facts, if true, could show that Lieutenant Frye knew that Mr. Barker was going to be restrained for an inordinate amount of time and that he was using

restraints as punishment rather than for legitimate purposes.

Defendant Rodgers is a corrections officer. According to Lieutenant Adams' deposition testimony, he was on constant watch while this incident took place. The Court has not been able to locate any specific evidence about defendant Alston's role, however, but defendants' memorandum appears to concede that he was also part of the constant watch team. Defendants' motion for summary judgment, Doc. 61, at 12 ("Alston and Rodgers were assigned to monitor Barker on constant watch"). Under the Court of Appeals decision, these two officers would have been defendants who both knew of the discomfort being imposed by Mr. Barker's restraints and who had no legitimate purpose to leave him restrained.

Defendants argue that these officers could not have been responsible for any alleged constitutional deprivation because they had no authority to make any decisions about placing Mr. Barker in solitary confinement or leaving him there. This is a factual assertion, however, and defendants have not identified any part of the record which supports it. Again, if, as Mr. Barker contends, he was willing to have his handcuffs removed, the record does not conclusively establish that neither of these defendants could have accomplished that task. Further, there is authority for the proposition that "[a] correctional officer has an affirmative duty to intercede on behalf of an inmate when he witnesses a violation of that inmate's Eighth Amendment rights by his or her fellow officers." Kee v. Hasty, 2004 WL 807071, *26 (S.D.N.Y. April 14, 2004). Whether these defendants were in a position to intervene, and the extent to which they were aware that Mr. Barker was allegedly being needlessly punished by being left in restraints, are factual issues better suited for resolution at trial. At this point, however, these defendants have not established an entitlement to summary judgment.

## V.   Conclusion and Order

For these reasons, the remaining issues raised by defendants' motion for summary judgment (#61) are resolved as follows.   Summary judgment is granted to defendants on the claim of an unconstitutional policy or practice, and to defendants Goodrich and Timmerman-Cooper based on their lack of personal involvement in the alleged constitutional violation.   The motion is denied in all other respects.   The Court will issue a ruling on whether defendants waived the matters they have attempted to raise in their supplement to the summary judgment motion after a reply brief on that issue is filed.

/s/ Terence P. Kemp
United States Magistrate Judge